May it please the court, my name is George Murphy with the law firm of Farmer, Murphy, Smith & Alliston, appearing on behalf of Appellate Center. A few days ago, your honors, I sent a letter to the court, actually on June 10, bringing to the court's attention a supplemental authority. And hopefully you will have that in the materials in front of you. And I brought to your attention the case of Rosenberg v. City of Fremont. It's a decision of the 4th District Court of Appeal, Division 2. And that's the same court, same division that issued the Adams case upon which we place reliance in connection with the duty issue in this case. And what's important about that case, let me just point out to you what I pointed out in the letter, which is that decision currently is not a published decision. It was, publication has been requested, but in the context of asking or recommending it to you, I cited authority for the proposition that this court can rely on published decisions of state appellate courts. And also pointed out that I'm citing it really to serve as a guide for the court on the question of what the California Supreme Court would be likely to do if confronted with the question of whether Adams extends beyond the context of the suicide scenario and into a situation that is analogous to the case that's presently before you. That decision, the Rosenberg case, does in fact extend Adams beyond the suicide situation and indicates on facts that are very comparable to the facts of this case that there is no duty for the pre-shooting activities. The court rejected the notion that you can separate the pre-shooting activities from the shooting itself in order to try to create an argument for negligence based on those activities, creating the circumstance that causes the person resisting arrest to engage in conduct that requires the police to use force. Isn't this an argument you're making for the first time on appeal? No, not the argument. The only difference is the case – oh, I'm sorry. This argument was presented in the context of a post-trial motion. Only in a post-trial motion. Yes, Your Honor. What about the application of Rule 50? Well, our contention is that this court has the discretion and the power and the authority to review the duty issue because it presents a pure question of law with respect to facts that are not in dispute. And so the reason – How much do you get a case for that proposition? Well, one case that we cite to the court is the Walmart case. There's a footnote in Walmart that states that proposition. And that Walmart is James v. Walmart, 279 F. 3rd, 883. And it's footnote 4 at page 888 of that case. And this court says, and quote, In our discretion, we may consider an issue not raised below if the issue is purely one of law, does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised. And it cites another Ninth Circuit case as authority for that proposition. That speaks more to what we do on appeal rather than what the district judge is required to do if you've not made the motion at the close of evidence, and then you try to make the motion after the verdict comes in. So you've got a Rule 50 problem, which is a somewhat distinct problem. Yes. I'm just making the argument. Your point is well taken, Your Honor. Those are two separate issues, but I guess ultimately, perhaps, it doesn't make much difference. We are now here on appeal, and I guess the question is really whether you have the authority to consider this issue. This isn't the first time it's been raised. It was raised in post-trial. But even if this was the first time it was raised, even if it had never been raised before, our position is that you would still have the discretion to consider this particular issue. And remember, we're dealing strictly with state law issues. Our appeal raises only California state law issues. And the duty issue is one that particularly lends itself to addressing the issue on the merits because it involves important public policy considerations for the state of California. And you know, going through the Roland v. Christian construct for analyzing duty, at every step of the way it involves analyzing it from the standpoint of important public policy considerations. And a case like this, I'm sure you can appreciate, has a very significant effect on California, on California government entities. There would be a chain reaction, a river, what's the word I'm looking for, a chain reaction of events, bad events, for government entities who are already struggling financially and trying to find ways to survive in a difficult financial environment. If this case is allowed to stand, whether published or unpublished, it's going to create a lot of problems for government entities. And the unfortunate part is if you perform the duty analysis, it's very clear, especially in light of this recent case that we're bringing to your attention, that under Adams, as applied beyond the suicide context, that there just is no duty in this case and therefore no liability. And so it would be extremely unfortunate for this court not to exercise the authority that it has to address the issue on the merits. The, you know, we've set forth the duty analysis in our brief, and I think if the court takes a look at that, the Rosenberg case, that really just reinforces the point. And the essence of the point, which is directed right to the facts of this case, is stated as follows. In short, the undisputed facts show that Rosenberg himself took the action that escalated this event from one involving nonlethal force to one necessitating the use of deadly force. That's exactly what happened here in this case. Mr. Lifton was the one who started all of these events in motion, driving at an excessive speed through a red light, crashing into cars, climbing out the window of his car with a white bag, running from the scene of the accident. The police didn't know whether there were injuries or not involving the hit-and-run accident. Of course, that would be a felony. Officer pursues into a PEG&E parking lot, gets out of the vehicle. Mr. Lifton picks up a pipe. Officer tells him to drop the pipe several times. Mr. Lifton does not. Then Mr. Lifton begins making a move at the officer with the pipe raised. Officer retreats, gets into his car, drives away, calls the radio, asks for backup. They eventually, backup arrives. They follow Mr. Lifton out into a field, again asking him to put the pipe down. He still has the pipe, refuses to do so. And at that point, they attempt to use the taser on him, a nonlethal method of subduing him after he refuses to put the pipe down. They miss, unfortunately. And he reacts to that by charging after one of the officers, who either falls down or is knocked down with the pipe. The evidence is conflicting on that one point. The individual raises the pipe up. Mr. Lifton raises the pipe up, apparently intending to strike the officer who has fallen on the ground in the police shooting. And so that is basically the classic scenario that is obviously a justified shooting, as the jury determined, and the circumstances that led up to the event. There is no duty under the analysis of Adams as extended by this recent case that we brought to your attention. Another argument that we brought to the Court's attention is Government Code Section 845.8. Let me just ask you a question right at the beginning on that section. As I read it, Cal Government Code 848.8, 845.8, is a specific application of Cal Government Code 820.2. 820.2 does not provide immunity for excessive force, so why should we interpret 845.8 as providing immunity? Well, I think 845.8 should be read literally, as it states that neither a public entity nor a public employee is liable for injury caused by a person resisting arrest. I think the Ladd case that we've cited for the California Supreme Court decision makes it clear that it applies in situations where the individual actually causes his own injury, which is what happened in this case. Mr. Lifton was determined to have been 30 percent responsible for causing his own injury. So just a literal reading of the statute, and then as interpreted by Ladd, would suggest that. And also there is a case, another case, that I can bring to the Court's attention, but with your permission. It's a decision of this Court, but it's not a published decision, and I don't know if you would like me to advise you. It's not a published opinion. It's not a statute. But, you know, our position is that the statute is, you know, there are obviously not much case law on this point, but by its own language would certainly apply. And, again, this issue was not raised below. This was raised for the first time on appeal. But as we point out in our brief, waiver in California, an immunity argument, governmental immunity argument, is jurisdictional and can be raised for the first time on appeal in several cases. Is it jurisdictional in federal court? Well, it's as a matter of California law, just in the context. Not jurisdictional in the sense that it can be raised at any time during the course of a proceeding and even for the first time on appeal. Do you have a federal case law for that? This is California substantive law, but our position is that under the Erie Doctrine, because this is part of the California substantive law in this area, that that should be recognized by this Court as well. It's not merely a procedural rule. And so, for example, Rule 50 should not supersede this area of state substantive law concerning the state cause of action. We've also raised the issue of causation, and this was raised also in the context of the post-trial motions. And I would like to just point out for the Court, too, that there was a motion for directed verdict, and in the context of the motion for directed verdict, on the record, a counsel for defendants argued that the plaintiffs failed to state a case for the wrongful death cause of action, which is the state law negligence cause of action. The counsel did not specifically use the words duty or causation, did not identify, spoke in a more general way, but, you know, obviously I would like the Court to view that as being sufficient to preserve the issue. And so, if the Court views it in that light, then we don't have the waiver issue. Can you point to me where you made your comment on the motion for a directed verdict? For judgment. Yes. Can you point to me on the record where that motion is? Yes, Your Honor. I believe I've got the, if you can. Thank you, Your Honor. I had an excerpt from the record. It's in the reporter's transcript, and, of course, I'd be happy to send that to the Court. It's, it was an oral motion, and, you know, in fairness, it was very generic and very general. As I say, the words duty were not, the word duty was not used. The word causation was not used. It was addressed to the state law wrongful death cause of action, however, and it was referred to specifically. And you're saying it's not in the excerpt from the record? I don't, you know, I don't think that that portion is in the excerpt. It's in the reporter's transcript. If we can't find it and it became irrelevant, we'll send something. Otherwise, don't worry. Okay. Thank you, Your Honor. The causation argument, I know you're familiar with that. I won't belabor the point, but. Are you, maybe you could clarify something I wasn't clear from your brief. Are you talking now that it was not causation in fact or that it was not the proximate cause? That it was not the proximate cause. The officer's pre-shooting conduct. Right. Was not the proximate cause. Proximate cause. Yes. And to be very specific, what I'm talking about, there's the officer's pre-shooting conduct did not cause Mr. Lifton to act in a manner that precipitated the use of deadly force. Right. That his conduct, there's no causal connection between the, you know, there's nothing, there's no evidence except speculation. And speculation, of course, is not evidence. The testimony of the expert, police standards expert, of course, does not create that kind of causation. And the expert himself, the plaintiff's expert, acknowledged he does not have the expertise to say whether it would have made any difference if the police had followed the approach that that expert recommended. Because he's not an expert. He's not a psychiatrist. And probably nobody would know. And I think that's the point. It is something that is inherently speculative. And that's very similar to the Salazer case that was cited for the court. It's just an area where you don't know. All you can do is kind of guess. And that's insufficient, obviously. Well, why couldn't George use common everyday experience and say in their judgment that the way in which the police handled the situation was a contributing factor to the decedent's final act, which then in turn caused the police to shoot him dead on the spot? That, in fact, the Salazer case, California Supreme Court case 25 Calforth 763, addressed that exact point. Read to me the language that you cite negates that possibility. Read the Salazer case that negates that possibility. Thank you. I'm having a hard time finding it. But the court specifically addresses what it calls the common sense analysis, uses those exact words that you use, same language, and said that, you know, it is, you know, a jury might want to make the common sense analysis that, well, it must have done something wrong or wouldn't have happened if, you know, it would have happened. No, that's not the suggestion that I made. The suggestion I made here was that the police surround him, then they shoot a taser gun at him and miss. In other words, they're taking aggressive action at him. So now here's this guy who's deranged, at least temporarily, who thinks that the police are trying to kill him, and then tries to defend himself. Then the police shoot him dead because he raised the pipe over his head. Now, wasn't it a foreseeable consequence of handling it in that manner that he would try to defend himself and lead to a situation where deadly force was going to be required? Well, foreseeability is not the issue in this context. Well, it's a substantial contributing factor as approximate cause. Well, the problem with that is, in your question, you assumed what he was thinking at the time. Well, juries do that all the time. I just can't imagine that the law in California is as you say it is. Read it to me, and maybe you'll change my mind. But you say that, and then I ask you to read it, and you can't find it. Well, it's here. If you'll give me a moment. Oh, here we go. It's frustrating because as soon as I walk out of here, I'm going to find the site. We're over your time. Let's do this. Let's hear from the other side, and we'll give you a minute in rebuttal. Thank you, Your Honor. I appreciate that. Good idea. Good morning, Your Honor. Michael Ledad for the plaintiff. And I just want to make sure we're arguing both the appeal and the cross appeal at this time. Is that right? Okay. There we go. All right. To answer your question, Your Honor, you asked where in the transcript the defendants made their Rule 50 motion. It's in the court transcript of the trial at pages 1318 and 1319. And do we have that in our extract, or do we need to go to the other one? You'll need to look at the record, Your Honor. This Court has repeatedly said in numerous opinions that it's one of the strictest enforcers of Rule 50's requirements for how a motion is supposed to be made. And all of the grounds for a Rule 50 motion must be made at one particular time in the trial, and that is at the close of all the evidence. There are constitutional reasons for that rule, and we cited the case in our brief setting that forth. The defendants did not raise duty and did not raise proximate cause in their Rule 50 motion. It's been waived, Your Honors. As for 845.8, that's never been raised at any time until in front of this Court. That's also been waived. The case that the defendants have cited with respect to duty, asking this Court to consider duty at this time, that's the Jaynes v. Walmart case. And I'm aware that Judge Nelson was on that panel. In footnote 4 of the Jaynes case, the Court wrote, if the issue is purely one of law, does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised, then this Court may consider it. And the Court went on, if, however, the plaintiff might have tried his case differently, either by developing new facts in response to or advancing distinct legal arguments against the issue, the issue should not be permitted to be raised for the first time on appeal. And I would say that this case is controlling with respect to whether this Court even has the discretion to consider the 845.8 argument, because being raised for the first time on appeal, the factual record was never developed. The jury never made a finding about whether Mr. Lifton was resisting arrest and therefore would come under the ambit of this immunity potentially. To be resisting arrest in California, you have to willfully resist arrest. That question never went to the jury. Had it been an issue that would have to go to the jury, we certainly would have put evidence on that point and argued it. But even with the evidence in the record, a jury could have found that Mr. Lifton was not resisting arrest. That the jury could have agreed with the defendant's psychiatric expert and concluded that Mr. Lifton did not have the mental ability to form any intent at all to resist or not to resist. Or the jury could have found that on the facts, Mr. Lifton, before he was shot, simply turned around towards the officer and sighed and raised the pipe slightly, and then he was shot. There was a witness who said that. Or another witness who said he turned around slightly and raised the pole and then was shot, but was still 15 feet away. There's lots of factual questions about whether or not he could be construed to have resisted arrest. In any event, just finishing out 845.8, that statute also requires that an injury be caused by the person. Well, in this case, the jury made a finding of comparative negligence. Seventy percent of the injury was caused exclusively by the defendants. Thirty percent was caused by the plaintiff. This is an interesting situation. It's never been – there's no controlling authority in California about how you interpret 845.8 when there's comparative negligence. There's one opinion that has addressed it, and that's a concurring opinion in a Supreme Court case where Justice Mosk said, by the simple terms of this statute, we're going to limit it to – I would limit it to caused by, and when you've got comparative negligence, that will take care of the issues addressed by 845.8. That issue is fully briefed, and I'm not going to belabor any more. Can I ask you a question? If you prevail on the appeal against you, do we need to reach your cross-appeal? Yes, Your Honor. So you want a new trial? No. I believe that we should win our cross-appeal and this Court can enter judgment on a Federal constitutional claim as well as a State constitutional claim, and I would love to address that for the Court. Well, I don't understand. But how would that affect the relief that you got below? You won below at least the partial verdict. Yes, Your Honor. The relief would be different in this way. For a Federal civil rights claim, there are additional damages allowable. In State court, on a State claim, or wherever you are, on a State claim, you only get damages for the loss of companionship that the surviving heir sustained. But there is authority that when there's a Federal civil rights violation, that's insufficient to fully compensate the plaintiff and to deter future civil rights violations. You mean there has to be a new trial then? There would have to be a new trial on damages, Your Honor, for determined loss of life, the value of a loss of life, pain and – conscious pain and suffering, possibly punitive damages. Also, if the plaintiff were to prevail on a constitutional claim, there would be no negligence.   And if the plaintiff is not to prevail on a constitutional claim, there would be no negligence. So there would be a 100% comparative negligence would be out the window, and further there would be attorney's fees allowable under law. I'd like to finish addressing the defendant's issues, if the Court will allow me. On the Rosenberg case raised by the defendants, it's an unpublished case. If we were in a California court, it wouldn't be citable. If this were an unpublished case court, a case of this court, it wouldn't be citable. It really should have no persuasive authority at all. Furthermore, there should be no need to try to predict how the California Supreme Court would rule, because the Court has already ruled on this issue of a negligence claim, given police conduct leading up to a shooting. And we've cited these cases, the Groot case, the Munoz case, both from the 1970s. Very strikingly similar facts were that the Supreme Court of California held that where police use unreasonable, negligent, dangerous tactics leading up to a shooting and that ultimately the victim of the shooting lashed out at the police, causing the police to use deadly force, that that can sustain a negligence claim against the police. That's well established. And even more recently, in the Lube II case, the California Supreme Court again applied general negligence principles to police conduct in the course of a seizure and said along the way that police are to be treated like any other person with the same duty of care in the conduct, in their own conduct. And finally, there's a case which the defendants have never addressed either in writing or in oral argument, and that's the Murphy case, which is a Ninth Circuit case, affirming a district court opinion which held that there can be a negligence claim under California law where police negligently create the situation that causes a decedent to lash out at them and then they use deadly force. So that's the controlling law, Your Honors. And under the Mangold case, only if there is no precedent or convincing evidence that the highest court of the State would decide differently would we need to predict State law. And that's what this Court is bound by. There's no need to even consider Rosenberg or Adams for that matter. Can you tell me whether in California a private damage remedy exists under the California search-and-seizure law? Yes, Your Honor. The quick answer is not yet. No court has so held at this time. And we're asking this Court. The improper case is certified, then, if we were to reach it at all to the Supreme Court of California. It's not necessary to certify it. That's an option that this Court would have, but I don't think it's necessary, especially since the California Supreme Court, about six months ago, laid out the formula that courts are to follow. And that's before this Court now in the plaintiff's reply brief. Basically, the California Supreme Court has instructed that courts should look at a particular constitutional provision and determine from the history of that provision whether there was some implied intent to create a cause of action or an explicit intent. I'll agree that there is nothing explicit in Article I, Section 13 of the California Constitution creating a cause of action. But it can be implied from the history of that. And it works this way. The argument works this way. In 1971, the U.S. Supreme Court issued its opinion in Bivens, which created a cause of action directly under the Fourth Amendment to the U.S. Constitution when federal agents violate that amendment. Three years later, the California voters approved Article I, Section 13, which is the corresponding searches and seizures provision of the California Constitution. The California Constitution has been construed by the California Supreme Court to be more broad than the federal Constitution. That means when the voters enacted that constitutional provision in 1974, we can presume that they were aware of the Fourth Amendment, which is worded almost exactly the same, and that their intent in enacting Article I, Section 13 was to have an amendment which is at least as broad as the Fourth Amendment, which at that time included a cause of action for damages. Now, that's, I think, sufficient under the California Supreme Court's guidelines for determining whether or not damages can be a remedy for a violation of that provision. But even if that's not sufficient, the Court says the next step is consider this using the Bivens formula, specifically relying on Bivens. Well, Bivens, again, considered almost the exact same wording and came to the conclusion, yes, there is a damages remedy under the federal Constitution, and it's fully briefed in our reply brief. I would submit that if this Court goes through that reasoning again, it will come to the same conclusion under the California Constitution. The evidence of proximate cause, going back to the last of the defendant's issues, it's much more than even what the Court was pointing out, that from common sense, it just makes sense that if the police are cornering a person who is irrational, mentally ill, that they may lash out, and that can be considered a proximate cause of the person lashing out. Beyond that, there was testimony from the plaintiff's expert. There was evidence from the defendant's training that they were trained, that this is a standard of care, they have to use special tactics when dealing with an emotionally disturbed person, because law enforcement is well aware that those kinds of people will often lash out and cause the police to use force against them that would be otherwise unnecessary if the police follow these well-recognized, generally accepted practices. Well, suppose there are specific policies. The fact that they exist, how does that show that these police caused the death? Well, even the policies say, police, you must follow this standard of care, and it's for the protection of the police, the public, and the emotionally disturbed person. The policy itself indicates that it's foreseeable that if you don't follow the policy, the emotionally disturbed person can be injured. That's the whole purpose for it. And so from that, you can infer proximate cause, Your Honor. In addition to that, the defendant's psychiatric expert, who in court today, they say, the plaintiff's police practices expert wasn't a psychiatrist. He wasn't competent to give testimony in this area. Well, their own psychiatric expert said, only when the police moved in on Mr. Lifton, contrary to our standard of care, which we're talking about, only at that time did the And the exact quotations from that colloquy in the record is at page 17 of the plaintiff's opening brief, footnote 9. Now, I'd like to address the rest of the plaintiff's issues on appeal, Your Honor. Qualified immunity has been affected by the Salsier case, and as I'm sure you're well aware. It's a two-part test, and whether there's qualified immunity depends, number one, on whether a right was violated by the police, and number two, whether that right was clearly established under the totality of the circumstances in a particular case. Now, when Salsier first came down, this was about two weeks before our trial in this case, and honestly, nobody knew exactly what it was going to mean at that time and how it would be interpreted. And to me, the language was difficult to parse through, and it's taken many, many readings and other court interpretations to get a better understanding of it. And that's where we were when this issue was addressed by Judge Levy at the trial. But Salsier says that its standard is meant to deal with the hazy border between excessive force  Sometimes that border is hazy. And Salsier was a very weak case, factually. It was a case where the plaintiffs merely alleged he was jostled or shoved by the police, and the governmental interest there was that the agents who jostled him were trying to protect the Vice President and the crowd of people. That was a particularly hazy, borderline case. The Dioro case from this circuit went on to explain that, really, Salsier is going to affect borderline cases. And this case, the Lipton case, is not a borderline case. In fact, the two leading cases in the Ninth Circuit that have addressed qualified immunity in an excessive force situation since Salsier are the Headwaters case and the Dioro case. And both of those cases found no qualified immunity using basically a traditional excessive force analysis, looking at the facts, deciding whether, under the Graham standards, the officers use excessive force. And that same kind of analysis here would reveal that there was no qualified immunity. As a final gloss, the Hope v. Pelzer case from the Supreme Court, which came down after Salsier, said that all that's required to show that a law is clearly established for the police is whether the prior case law gave fair notice to the police. And the fair notice in this situation was established by the Alexander case, which is really central to the plaintiff's appeal here. Alexander clearly established that police may not use excessive or unreasonable tactics that create the situation where deadly force becomes necessary. And the Alexander court specifically said that that situation was a quote-unquote classic Fourth Amendment violation. Now, after Alexander, two more courts in the circuit followed it, Reynolds and Duran. And furthermore, the Alexander claim is consistent with the defendant's policies in this case. Again, it's no more than a recognition of the standard of care that police have to follow. They've got to be careful and use reasonable care in all of their tactics leading up to a shooting. The defendant's policies, their training, their testimony in this case was all on all fours with the Alexander case. So the law was clearly established. It was incorrect for Judge Levy at the close of the evidence to grant the Rule 50 motion with respect to this Alexander claim. And what Judge Levy did was he, rather than considering the totality of the circumstances, all of the evidence raised by the plaintiff in this case, he separated out each one by one and said, for instance, I'm not aware of any case that says officers all can't point their guns at a person. I'm not aware of any case saying officers can't yell at a person. And that's, I would submit, the improper way to do it. You've got to look at the totality of the circumstances as the Alexander case did and consider all of the evidence here and consider the expert testimony and the testimony of the defendants and their policies and their failure to follow their own standard of care and training. And that's what proves the Alexander claim in this situation. That claim went all the way through trial. The plaintiff had rested, and that's when the motion was granted. That claim, the Alexander claim, was completely argued and not argued, but all the evidence went out on that claim. It was the same theory that was argued to the jury with respect to negligence. And it's the same theory that we're relying on in terms of what the police did that was negligent in their conduct leading up to the shooting, their failure to follow this general standard of care, which even their own training recognized. Now, if this Court finds that it was improper to grant qualified immunity of the Alexander claim, then the plaintiff would request that a judgment be entered on that excessive force claim and that the verdict of negligence, as the jury was instructed in this case, is sufficient to support a verdict on the Alexander claim. In fact, that was exactly what was argued to the jury. The Fourth Amendment forbids unreasonable seizures. The Supreme Court has explained that excessive force occurs when police use objectively unreasonable tactics. As the jury was instructed on the negligence claim, if a police officer, under the circumstances he's confronting, fails to use reasonable care, he's negligent. As instructed in this case, there's no difference between the negligence standard and the Fourth Amendment standard. And given the jury's finding on the negligence claim, it's sufficient to also support a judgment on the Federal claim. We've briefed that more thoroughly in our reply brief. As to the amendment under Rule 15c, after the trial, the plaintiff requested that the Court allow amendment to add the State constitutional claim that we had voluntarily dismissed right before trial because the Federal claim was going to go to trial and we thought it would be redundant. And then in the course of trial, of course, the Federal claim was dismissed. So we asked the Court after trial to let us have the State constitutional claim back. The Court decided not to. But Rule 15c allows amendment after trial. It's supposed to allow a liberal amendment. And the whole issue is whether or not a party would be prejudiced by it. No one would be prejudiced here because that claim was the Federal Alexander claim was not kicked out until the very end of the trial at the close of the evidence. That's the exact same theory, virtually the same wording of the constitutional provision that we would rely on for the State claim. It's the same facts and the same law and the same claim. Now, as for remedies, if this Court finds for the plaintiff in his appeal in either the Federal or State constitutional Alexander claim, we would request a judgment be entered on one or both of those claims. And because they're constitutional claims, the remedies are different than for negligence, as Judge Alsop asked earlier. First of all, there's no comparative negligence. These questions go to the very heart of how our government will be allowed to seize or kill. And as this Court has recognized all too often, the people who are being killed by Oberzell's police are mentally ill or other people who are unable to care for themselves. This case presents an opportunity for this Court to reaffirm the promise of the   Supreme Court issued its opinion in Mapp v. Ohio, applying the exclusionary rule to the States. As the Court explained its courageous decision in that case, our decision founded on reason and truth gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and to the courts that judicial integrity so necessary in the true administration of justice. Thank you. Now you ran over. I'm going to give you a minute to approve that. Thank you, Your Honor. I appreciate that. I'm going to have to talk fast. Alexander has been very, very narrowly circumscribed by this Court in subsequent decisions. I would direct the Court's attention to Billington in particular, wherein the Court said, we read Alexander as limited by Duran to hold that where an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force. That's going to be intentional or reckless. We don't have that. We don't have an independent Fourth Amendment violation like you did in Alexander. They broke it. They busted into somebody's house without a valid warrant. There was the initial Fourth Amendment violation. Alexander is not controlling at all. There is no excessive force in this case. The concerning Section 845.8 of the Government Code, counsel postulated a scenario that involved intent. We don't know if there was intent. Well, intent's not required. Your time has just run out. Wow. Your Honor, may I just finish that one thought? Finish your thought. Okay. It can only apply in a comparative fault situation. If there's no fault on the part of the government entity, there's no need for the immunity. If all of the fault is on the part of the person trying to get away, then there's no need for the immunity. It's only going to apply in a situation exactly like this. Thank you. Thank you very much.
judges: Dw Nelson, W. Fletcher, Alsup